In re Mark D. RUTZ, Petitioner, Respondent,

v.

Irina Z. RUTZ, Appellant.

No. CX–01–2126.

Court of Appeals of Minnesota.

May 28, 2002.

Karim El–Ghazzawy, El–Ghazzawy Law Office, Minneapolis, MN, for respondent.

John E. Mack, Mack & Daby, New London, MN, for appellant.

Considered and decided by LANSING, Presiding Judge, RANDALL, Judge, and STONEBURNER, Judge.

## OPINION

LANSING, Judge.

Three months after entry of judgment dissolving Mark and Irina Rutz's marriage, Irina Rutz petitioned to move the residence of their two children from Minnesota to Hawaii. The district court, relying in part on statutory provisions governing parenting plans, denied the motion. Although we conclude that the dissolution judgment did not create a parenting plan as defined by Minn.Stat. § 518.1705 (2000), we affirm the denial of the motion under Minn.Stat. § 518.175, subd. 3 (Supp.2001), because the record supports the district court's finding that the purpose of the proposed move was to interfere with Mark Rutz's parenting time.

## FACTS

Irina and Mark Rutz are the parents of two children, one born in 1995 and one in 1997. In 1998, Irina Rutz moved from the family home in Hutchinson to Willmar, and Mark Rutz petitioned for dissolution. The dissolution proceedings were acrimonious, and the Rutzes were unable to agree on visitation. Irina Rutz alleged that Mark Rutz abused the parties' daughter; the allegations were not substantiated. Mark Rutz pleaded guilty to disorderly conduct stemming from a dispute with Irina Rutz and voluntarily permitted the entry of an order for protection prohibiting his contact with Irina Rutz.

In August 2000, Irina Rutz moved from Willmar to St. Paul to take graduate-level agricultural classes. She had earned the equivalent of a doctorate in agronomy and plant genetics before emigrating from the former Soviet Union in 1994. She did not consult with Mark Rutz before she and the children moved to St. Paul. Mark Rutz remained in Hutchinson.

The district court entered judgment dissolving the Rutzes' marriage in May 2001. At that time, Mark Rutz, who has a graduate degree and had been employed at Hutchinson Technologies, was unemployed and receiving public assistance because of an emotional disability. Irina Rutz was a student with the potential to earn a significant income in agricultural science after completion of her graduate-level courses. The court placed sole physical custody of the children with Irina Rutz and joint legal custody with both parents. The court expressed concern that either parent might attempt to limit the other's parental role.

In June 2001, the social security administration approved disability benefits for Mark Rutz retroactive to May 1999. About the same time, Irina Rutz began interviewing for employment in Hawaii. In July, Irina Rutz brought a motion to remove the residence of the children to Hawaii. Her supporting affidavit alleged that she had employment opportunities in Hawaii, her older child had an interest in marine biology, and she would facilitate Mark Rutz's visitation with the children in Hawaii.

Mark Rutz opposed the motion and submitted an affidavit to support his allegation that Irina Rutz's purpose in moving to Hawaii was to limit his parenting time with the children. His affidavit stated that Irina Rutz was not facilitating visitation and

that he had not been able to communicate with the children since they moved to St. Paul in 1998.

Following an evidentiary hearing, the district court denied the motion to move the children's residence. The court found that Irina Rutz had no assurance of getting a job in Hawaii, the proposed removal was an attempt to interfere with Mark Rutz's parenting time, and the motion was made less than a year after entry of the dissolution judgment and did not satisfy the modification provisions of Minn.Stat. § 518.18(a), (c) (2000). Irina Rutz appeals.

## ISSUES

I. Did the parties' dissolution judgment create a parenting plan?

II. Did the district court abuse its discretion by denying Irina Rutz's motion to remove the children's residence from Minnesota?

## ANALYSIS

### I

The standard that applies to removing a child's residence from Minnesota in cases governed by parenting plans under Minn.Stat. § 518.1705 may be altered by parental agreement to vary from the standard for cases involving a conventional custody arrangement. *Compare* Minn. Stat. § 518.1705, subd. 7 (parenting plan), *with* Minn.Stat. § 518.175, subd. 3. (conventional standard). The district court did not specifically address whether the judgment dissolving the parties' marriage was intended to create a parenting plan, but its order denying the motion relies on statutory provisions governing parenting plans. A parenting plan "must" include, among other requirements, "a method of dispute resolution." Minn.Stat. § 518.1705, subd. 2(a)(3). The Rutzes agree that their judg-

ment lacks a method of dispute resolution, but Mark Rutz contends that this omission is not dispositive.

Whether a dispute-resolution mechanism is necessary to create a parenting plan requires interpretation of Minn. Stat. § 518.1705, the parenting-plan statute. Statutory interpretation is a legal question reviewed de novo. *In re Estate of Palmen*, 588 N.W.2d 493, 495 (Minn. 1999). "When the language of a statute is plain and unambiguous, it * * * must be given effect." *Burkstrand v. Burkstrand*, 632 N.W.2d 206, 210 (Minn.2001). The parenting-plan statute states that a parenting plan "must" include a dispute-resolution mechanism. Minn.Stat. § 518.1705, subd. 2(a). In statutes, "must" can be a synonym for the mandatory "shall," but when the context suggests otherwise, "must" need not have a mandatory meaning. *Lenz v. Coon Creek Watershed Dist.*, 278 Minn. 1, 11, 153 N.W.2d 209, 217 (1967); *see* Minn.Stat. § 645.44, subd. 16 (2000) (stating "shall" is mandatory). The statement that a parenting plan "must" include a dispute-resolution mechanism is unambiguous, and the context of that requirement does not suggest an alternative reading. Minn.Stat. § 518.1705, subd. 2(a). Furthermore, the inclusion of a dispute-resolution mechanism is central to the purpose and function of parenting plans that are designed to provide comprehensive methods of resolving custody, visitation, and access issues. The lack of a dispute-resolution mechanism in the parties' dissolution judgment, which does not specifically state that a parenting plan has been agreed to or imposed by the court, means that the judgment did not create a parenting plan.

### II

Removal decisions for custodial arrangements not involving parenting plans are reviewed to determine whether "the

trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Silbaugh v. Silbaugh,* 543 N.W.2d 639, 641 (Minn.1996) (quoting *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn.1985)). Because the court apparently presumed that the parties' dissolution judgment created a parenting plan, the order does not contain a conventional removal analysis. *See id.* The district court did, however, find that Irina Rutz's proposed removal was intended to interfere with Mark Rutz's parenting time and that this fact compelled denial of Irina Rutz's motion.

■■ When one parent has been given parenting time and the child resides with the other parent, the parent with whom a child resides "shall not move the residence of the child to another state except upon order of the court or with the consent of the other parent." Minn.Stat. § 518.175, subd. 3. Because it is undisputed that the dissolution judgment provided Mark Rutz with parenting time and because Mark Rutz did not consent to Irina Rutz's proposed removal, her proposed removal was possible only with court permission. If the purpose of a proposed removal is to "interfere" with the other parent's parenting time, the court "shall not" permit the removal. *Id.*

■ Citing her own testimony that she would allow Mark Rutz visitation and would abide by the district court's visitation order, Irina Rutz alleges that the record does not support the district court's finding that her motion was an attempt to interfere with Mark Rutz's parenting time. Irina Rutz, however, admits that "[t]he district court did not believe her." Appellate courts do not engage in a redetermination of facts but defer to the district court's credibility determinations and to findings that are supported by the record. *Sefkow v. Sefkow,* 427 N.W.2d 203, 210 (Minn.1988). Findings of fact are not set aside unless clearly erroneous. Minn. R. Civ. P. 52.01. Review is conducted in the light most favorable to the underlying findings. *Vangsness v. Vangsness,* 607 N.W.2d 468, 472 (Minn.App.2000).

■ Applying these standards, the record establishes that (a) both the dissolution and removal proceedings were acrimonious and visitation has been problematic since Irina Rutz was awarded temporary custody; (b) the same district court judge presided in both proceedings, was familiar with the facts, and had an opportunity to observe both parents in court; (c) in the dissolution proceeding, both the district court and the custody evaluator expressed concern that giving one parent sole control over the children could result in that parent seeking to diminish the other parent's role in the children's lives; (d) in the removal proceeding, Irina Rutz stated that she wants to move to Hawaii because, among other things, she has better job prospects there and the parties' son has an interest in marine biology; (e) Irina Rutz unsuccessfully applied for only two jobs in her field in Minnesota, no jobs in her field in Wisconsin or Iowa, and no jobs outside her field in Minnesota, Wisconsin, or Iowa; (f) Irina Rutz has no firm job offer in her field in Hawaii; (g) several jobs she has considered in Hawaii involve working as a waitress in restaurants, including at least one franchise that also does business in Minnesota; (h) the Rutzes' son—whose interest in marine biology is advanced in support of the move—is six years old; (i) Mark Rutz testified that, since Irina Rutz moved out of the marital home, she has obstructed his ability to communicate with the children and to arrange visitation with the children; and (j) Mark Rutz testified that Irina Rutz did not consult him about her move to St. Paul or her proposed move to Hawaii.

■ We reject four arguments advanced by Irina Rutz against the district court's finding that the purpose of the move is to interfere with Mark Rutz's parenting time. First, Irina Rutz alleges that an intent to interfere is insufficient to deny her motion because the critical issue is whether a new parenting-time arrangement can be ordered that would allow Mark Rutz to maintain his relationship with the children. This argument is defeated by the statutory provision prohibiting the court from allowing removal if the purpose of the move is to interfere with parenting time. Minn.Stat. § 518.175, subd. 3. Furthermore, it is highly speculative that a new *schedule* of parenting time would allow Mark Rutz to retain his relationship with the children in light of the attendant transportation cost and both parties' unemployed status.

■ Second, referring to a presumption favoring a custodial parent's ability to remove the residence of children from Minnesota recognized by *Silbaugh* and *Auge v. Auge*, 334 N.W.2d 393 (Minn. 1983), Irina Rutz also argues that this record is insufficient to overcome that presumption. The presumption, however, is defeated when the party opposing removal shows that the removal is intended to interfere with visitation. *Silbaugh*, 543 N.W.2d at 641; *Auge*, 334 N.W.2d at 400.

Third, Irina Rutz notes that under *Sharp v. Bilbro*, 614 N.W.2d 260 (Minn. App.2000), *review denied* (Minn. Sept. 26, 2000), and *Dabill v. Dabill*, 514 N.W.2d 590 (Minn.App.1994), a denial of, or interference with, visitation is not controlling in custody-modification proceedings, but must be considered along with other factors, and argues that visitation problems should not preclude removal. But *Sharp* and *Dabill* did not involve removal. And in the removal context, Minn.Stat. § 518.175, subd. 3, forbids removal when the intent of the party seeking removal is to interfere with the other parent's parenting time. For these reasons, *Sharp* and *Dabill* are distinguishable.

■ Fourth, Irina Rutz argues that Minn.Stat. § 518.175, subd. 3, and Minn. Stat. § 518.18(a) unconstitutionally violate her right to travel if, without proof that her proposed move is contrary to the children's best interests, those statutes prevent her from removing the children's residence from Minnesota. Appellate courts address only questions presented to and considered by the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). The constitutionality of Minn.Stat. § 518.175 was not presented to or addressed by the district court. Also, Irina Rutz did not, as is required by Minn. R. Civ.App. P. 144, notify the attorney general of an appellate challenge to the constitutionality of Minn.Stat. § 518.18(a). And her notice to the attorney general of the constitutional challenge she made to that statute in district court is insufficient to satisfy rule 144. Minn. R. Civ.App. P. 144 cmt.; *Maxwell Communications v. Webb Publ'g Co.*, 518 N.W.2d 830, 834 n. 6 (Minn.1994). Therefore, constitutional challenges are not properly before us, and we decline to address them. *See Theorin v. Ditec Corp.*, 377 N.W.2d 437, 440 n. 1 (Minn.1985).

The district court's finding that Irina Rutz intended to interfere with Mark Rutz's visitation is supported by the record, and the district court correctly applied Minn.Stat. § 518.175, subd. 3, to deny Irina Rutz's removal motion. Therefore, we affirm the district court's denial of Irina Rutz's motion to remove the children's residence from Minnesota.

Because of our resolution of the appeal, we decline to address Mark Rutz's motion to strike portions of Irina Rutz's brief.

## DECISION

The judgment dissolving the parties' marriage lacked a method for resolving disputes, and, thus, it did not create a parenting plan. The record supports the finding that Irina Rutz's purpose in seeking to remove the children's residence from Minnesota was to interfere with Mark Rutz's parenting time. Therefore, the district court did not abuse its discretion by denying Irina Rutz's motion to remove the children's residence from Minnesota.

**Affirmed.**