In the MATTER OF the CUSTODY
OF M. J. H.,

Eric John Christensen, petitioner,
Appellant,

v.

Danielle Marie Healey, Respondent.

A16-1056

Court of Appeals of Minnesota.

Filed July 3, 2017

John A. Warchol, Warchol Law Offices, PLLC, Minneapolis, Minnesota (for appellant).

Julia Craig, Law Offices of Southern Minnesota Regional Legal Services, Inc., Mankato, Minnesota (for respondent).

Considered and decided by Bjorkman, Presiding Judge; Hooten, Judge; and Reyes, Judge.

## OPINION

HOOTEN, Judge

Appellant father challenges the district court's denial of his motion to modify parenting time. Although appellant characterized his motion as only a request for equal parenting time or, in the alternative, increased parenting time, the district court nonetheless construed his request as a motion to change physical custody and the child's primary residence. Reasoning that both of these types of relief require the moving party to show that the child is endangered in the child's current custodial arrangement, the district court denied appellant's request for equal parenting time on the ground that appellant failed to assert a prima facie case of endangerment. Because the district court erred by determining that appellant's request was necessarily a motion for a change in physical custody and the child's primary residence and because the district court erred by failing to make sufficient findings regarding appellant's alternative request for increased parenting time, we reverse and remand.

## FACTS

Appellant Eric John Christensen and respondent Danielle Marie Healey are the parents of one minor child, born in 2010. In a stipulated June 2011 order, the district court awarded joint legal custody to the parties, sole physical custody to Healey, and parenting time to Christensen. In April 2015, due to the child starting school, the parties agreed to amend the 2011 order. The resulting order provided that during the school year the child would reside primarily with Healey and that Christensen would have parenting time every other weekend. The order also stated that the parties would alternate weeks with the child during the summer. The parties do not dispute that the child's primary residence was with Healey after the 2015 amendment.

In 2016, Christensen moved to modify parenting time to equal parenting time by extending the alternating week schedule to the entire calendar year. Alternatively, Christensen requested an increase in the amount of his parenting time to something less than equal parenting time during the school year. Notwithstanding Christensen's assertion that he was not seeking to modify physical custody or the child's primary residence, the district court determined that Christensen's request for equal parenting time was a request for joint physical custody and would change the child's primary residence. As a result, the district court applied the endangerment standard provided by Minn. Stat. § 518.18(d)(iv) (2016). The district court concluded that Christensen had not made a prima facie case of endangerment and denied his request for equal parenting time. The district court did not specifically address Christensen's alternative request for increased parenting time. Christensen appeals.

## ISSUES

I. Did the district court err by treating Christensen's request for equal parenting time as a motion to modify physical custody and to change the child's primary residence?

II. Did the district court err by failing to sufficiently analyze Christensen's alternative request for increased parenting time?

## ANALYSIS

■ "The district court has broad discretion in determining parenting-time issues and will not be reversed absent an abuse of that discretion." *Dahl v. Dahl*, 765 N.W.2d 118, 123 (Minn.App. 2009). A district court abuses its discretion by relying on findings of fact that are not supported by the record or by misapplying the law. *Id.* We review questions of law de novo, including the question of which legal standard applies to changes in parenting time. *Id.*

I. **The district court erred by treating Christensen's request for equal parenting time as a motion to modify physical custody and by relying solely on the apportionment of parenting time when determining whether Christensen's request would change the child's primary residence.**

■ Christensen argues that the district court erred by treating his request for equal parenting time as motions for joint physical custody and to change the child's primary residence, which are governed by the endangerment standard provided by Minn. Stat. § 518.18(d)(iv). Christensen contends that because his request was a motion to modify parenting time, not a motion to modify the child's physical custody or primary residence, the district court should have analyzed his request under the best interests standard provided by

Minn. Stat. § 518.175, subd. 5 (2014).[1]

"A modification of custody or a change of the child's primary residence requires that the district court utilize the procedures set forth in Minn. Stat. § 518.18(d) and associated caselaw." *Suleski v. Rupe*, 855 N.W.2d 330, 334–35 (Minn.App. 2014). Under Minn. Stat. § 518.18(d) (2016), a district court "shall not modify a prior custody order or a parenting plan provision which specifies the child's primary residence unless it finds . . . that a change has occurred in the circumstances of the child or the parties and that the modification is necessary to serve the best interests of the child." The statute lists five separate bases for modification. Minn. Stat. § 518.18(d)(i)-(v). The most commonly invoked basis for modification, and the one relevant to this appeal, is endangerment of a child. *Id.* (d)(iv). The endangerment standard provides that modification may occur if the district court finds that "the child's· present environment endangers the child's physical or emotional health or impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." *Id.*

Modification of parenting time, however, is governed by Minn. Stat. § 518.175, subd. 5. Under that statute, "[i]f modification would serve the best interests of the child, the court shall modify the decision-making provisions of a parenting plan or an order granting or denying parenting time, if the modification would not change the child's primary residence." Minn. Stat. § 518.175, subd. 5(a).

In determining whether the endangerment standard of Minn. Stat. § 518.18(d) or the best interests standard of Minn. Stat. § 518.175, subd. 5, applies to Christensen's request, we must determine if the request for equal parenting time was a motion for modification of custody and whether the request, if granted, would change the child's primary residence. The district court, in evaluating the impact of Christensen's proposed modification on the child's custody and primary residence, concluded that an award of equal parenting time would change the child's custody arrangement to joint physical custody. The district court further determined that such an increase in parenting time would preclude the child from having a primary residence because neither parent would have a majority share of parenting time. As a result, the district court concluded that Christensen's request was governed by the endangerment standard of Minn. Stat. § 518.18(d).

### A. Custody

In challenging the district court's determination that the request for equal parenting time was functionally a motion to modify physical custody, Christensen argues that an award of equal or nearly equal parenting time would not necessarily be an award of joint physical custody. We agree.

Minn. Stat. § 518.003, subd. 3(d) (2016), states that " '[j]oint physical custody' means that the routine daily care and control and the residence of the child is structured between the parties." This definition provides no indication that any particular apportionment of parenting time consti-

1. In 2016, the legislature amended Minn. Stat. § 518.175, subd. 5. 2016 Minn. Laws ch. 189, art. 15, § 16, at 1116–17. The legislature specifically provided that the amendment will be effective August 1, 2018. *Id.* at 1117. The amendment adds a paragraph to subdivision

5, but does not change the substantive content of the subdivision we draw upon in this opinion. *See id.* at 1116–17. We therefore cite the 2014 version of Minn. Stat. § 518.175, subd. 5.

tutes joint physical custody. However, caselaw provides some guidance regarding when a parenting time modification constitutes modification of custody.

In *Geiger v. Geiger*, the father, based on his considerable parenting time, asserted that he was a "de facto ... joint physical custodian" of the parties' children. 470 N.W.2d 704, 706 (Minn.App. 1991), *review denied* (Minn. Aug. 1, 1991). Rejecting this assertion, this court "acknowledge[d] the frequency of [father's] visitation with the children," but stated that "those hours will not change the legal status of [the] custodial relationship." *Id.*

■ Moreover, in distinguishing between sole and joint physical custody, we are guided by the designation of the court or the parties, rather than by the percentage of time each party spends with the child. *See Frauenshuh v. Giese*, 599 N.W.2d 153, 156–57 (Minn. 1999) (following parties' stipulation and rejecting argument based on amount of time spent with child), *superseded in part on other grounds by statute*, 2000 Minn. Laws ch. 444, art. 1, § 5, at 984–85 (codified at Minn. Stat. § 518.18(d)(i)); *Nolte v. Mehrens*, 648 N.W.2d 727, 730 (Minn.App. 2002) ("[T]he label the parties place on their stipulated custodial arrangement is binding."). Caselaw therefore indicates that, when addressing whether a particular custody award constitutes joint physical custody, significant weight is given to the label put on the custodial arrangement in the relevant order or judgment, while limited weight is given to the apportionment of parenting time between the parents.

Given this statutory and caselaw guidance, merely increasing Christensen's parenting time to 50%, without more, would not modify the award to Healey of sole physical custody. Therefore, we conclude that the district court erred in treating Christensen's request as one to modify custody.

### B. Primary Residence

Christensen challenges the district court's determination that his request for equal parenting time would have changed the child's primary residence and therefore was governed by the endangerment standard under Minn. Stat. § 518.18(d). Christensen specifically represented that he was not seeking to change the child's primary residence, the child's school, or the location of the child's social and extracurricular activities. In determining that the proposed modification would change the child's primary residence despite Christensen's representations, the district court relied solely on the apportionment of parenting time between the parents. Christensen argues that the identification of a child's primary residence is not governed solely by the apportionment of parenting time. We agree.

The term "primary residence" is not defined in the definition section of chapter 518 or in any other section of the family law statutes. *Suleski*, 855 N.W.2d at 335; *see* Minn. Stat. § 518.003 (2016). While "residence" is defined by statute as "the place where a party has established a permanent home from which the party has no present intention of moving," Minn. Stat. § 518.003, subd. 9, this definition of "residence" provides little guidance regarding how to determine a child's "primary residence."

In *Suleski*, this court consulted dictionaries and concluded that the term "primary residence" means "the principal dwelling or place where the child lives." 855 N.W.2d at 335. In applying that definition, this court concluded that the district court's modification of parenting time did not change the child's primary residence from the mother's residence because the

child continued to live with the mother for the majority of the year and attended school in the mother's community. *Id.*

At the time of Christensen's request for equal parenting time, the order in effect provided that Healey would have sole physical custody and that her residence would be the child's primary residence. While Christensen's request sought an equal division of parenting time, we conclude that such a proposal would not necessarily change "the principal dwelling or place where the child lives." The *Suleski* definition of primary residence means more than simply the home of the parent who has the majority of parenting time.

First, neither statute nor caselaw indicates that a child's primary residence is determined solely by the apportionment of parenting time. Indeed, in *Suleski*, this court considered the place where the child attended school, in addition to the division of parenting time, when determining that father's motion to modify parenting time would not change the child's primary residence. *Id.* By relying in part on the fact that the modification would not change where the child attended school, this court acknowledged that identifying a child's primary residence is a broader inquiry than simply identifying which parent has a majority of parenting time. *See id.*

The factors relevant to identifying a child's primary residence will likely vary from family to family, and perhaps, from child to child in the same family. And, the factors relevant to identifying a particular child's primary residence may change as that child ages. The attachments of a child to each parent's place of residence that a district court may wish to consider in determining a child's primary residence could include where the child attends school, participates in extracurricular activities, socializes with peers, or worships. These factors are not exhaustive. However, factors such as these may be important aspects of a child's life that should be taken into consideration when determining the principal place where the child lives.

Second, courts must presume that "the legislature intends [for an] entire statute to be effective and certain." Minn. Stat. § 645.17(2) (2016). Interpreting a child's primary residence to be determined solely by which parent has the greater portion of parenting time would render ineffective a portion of Minn. Stat. § 518.175. Subdivision 5(b) of Minn. Stat. § 518.175 provides, in relevant part, that the endangerment standard applies to restrictions of parenting time.[2] That subdivision also states that "[a] modification of parenting time which increases a parent's percentage of parenting time to an amount that is between 45.1 [and] 54.9 percent parenting time is not a restriction of the other parent's parenting time." Thus, although the endangerment standard generally applies to motions in which a parent seeks to restrict the other parent's parenting time, the endangerment standard does not necessarily apply to mo-

---

**2.** This court has indicated that a parent's parenting time is restricted "when a change to parenting time is substantial." *Dahl*, 765 N.W.2d at 123 (quotation omitted). "Modifications [to parenting time] are less substantial changes in parenting time." *Id.* at 124 (quotation omitted). In determining whether a reduction in parenting time is a restriction or a modification, "the court should consider the reasons for the change as well as the amount of the reduction." *Id.* Insubstantial modifica-

tions of parenting time do not require an evidentiary hearing and are governed by the best interests standard. *Braith v. Fischer*, 632 N.W.2d 716, 721 (Minn.App. 2001), *review denied* (Minn. Oct. 24, 2001).

Because there was no argument that Christensen was seeking to restrict Healey's parenting time and the district court did not analyze whether Christensen's proposed modification constituted a restriction, we do not address that issue here.

tions to modify parenting time to a percentage within the scope of the exclusion. The language of the statute indicates that a modification in parenting time that would change which parent has the majority of parenting time is not necessarily a restriction warranting application of the endangerment standard. But, under an analysis where a child's primary residence is determined solely based on the apportionment of parenting time, the endangerment standard would nonetheless apply to such modifications, despite the statutory exclusion.

■ Third, we conclude that determining a child's primary residence based solely on the apportionment of parenting time is inconsistent with both the best interests focus of custody and parenting time matters and the district court's discretion in addressing those questions. A court's analysis of parenting time disputes focuses on the best interests of the child. *See Rutten v. Rutten*, 347 N.W.2d 47, 51 (Minn. 1984) ("The focus in granting [parenting time] is primarily the best interests of the children."); *Schisel v. Schisel*, 762 N.W.2d 265, 270 (Minn.App. 2009) ("The bedrock principle underlying any decision affecting the custody of minor children is that their best interests must be protected and fostered."); *Clark v. Clark*, 346 N.W.2d 383, 385 (Minn.App. 1984) ("[T]he ultimate question in all disputes over [parenting time] is what is in the best interest of the child."), *review denied* (Minn. June 12, 1984). And, the district court has broad discretion in parenting time decisions. *Rutten*, 347 N.W.2d at 51; *Dahl*, 765 N.W.2d at 123.

To reduce a district court's primary residence determination to a simple matter of arithmetic would deprive the district court of much of its discretion in determining parenting time issues and would often preclude the district court from considering the child's best interests, as a significant portion of modification motions would be governed by the endangerment standard. Moreover, a parent seeking increased parenting time could manipulate the applicable standard by asking for just less than equal parenting time, rather than equal parenting time, therefore only having to show that modification is in the child's best interests, rather than that the child is endangered in his or her present environment. Such a rigid formula for identifying the standard to use in resolving a motion to modify parenting time is not consistent with the law's focus on the best interests of the child.

Finally, in many cases, reducing a district court's primary residence determination to arithmetic could needlessly prolong the expense and duration of proceedings to make even minor modifications of parenting time. If the child's primary residence changes every time the parent who has the majority of parenting time changes or when the parties move away from or to equal parenting time, the endangerment standard would apply to, and would unnecessarily burden, many motions for a minor increase in parenting time. Under Minn. Stat. § 518.18(d), a district court is required to conduct an evidentiary hearing on a motion to modify custody or a child's primary residence if the moving party makes a prima facie case for modification. *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008); *Spanier v. Spanier*, 852 N.W.2d 284, 287 (Minn.App. 2014).[3] Requiring a parent seeking even a minor change in parenting time to make a prima

---

**3.** Although *Goldman* and *Spanier*, as well as other published caselaw, address when a district court needs to hold an evidentiary hearing on a parent's motion to modify custody, this caselaw is applicable to motions to modify a child's primary residence because both motions are governed by Minn. Stat. § 518.18(d).

facie case of endangerment and the district court to hold an evidentiary hearing on the motion, simply because granting the motion would change which parent has a majority of parenting time, would increase the time and expense and heighten any acrimony between the parents. Such a lengthy and contentious process for minor modifications in parenting time that may incidentally change which parent has the majority of parenting time is inconsistent with the best interests of the child.

■ In conclusion, a child's primary residence is not determined solely by which parent has the majority of parenting time. We recognize that in most cases where one parent has significantly more parenting time than the other, the child's primary residence will likely be with the parent possessing the majority of parenting time. However, in cases like the present one, where the parents have or seek to have equal or nearly equal parenting time, the determination of the child's primary residence becomes more complex. In these cases, a district court should consider the division of parenting time and any other factors the record suggests are relevant to identifying the child's primary residence.

Because the district court erred by determining that Christensen's request for equal parenting time was a motion to modify custody and by concluding that Christensen's proposed modification would necessarily change the child's primary residence solely on the basis that neither parent would have a majority of parenting time, we reverse the district court's denial of Christensen's request for equal parenting time and remand for the district court to reconsider the request in a manner consistent with this opinion.[4]

## II. The district court erred by failing to make sufficient findings regarding Christensen's alternative request for increased parenting time.

■ Christensen argues that the district court erred by failing to address his alternative request to increase his parenting time to something less than equal parenting time. Because the district court failed to make sufficient findings regarding whether Christensen's alternative request for increased parenting time was in the best interests of the child, we remand his alternative request to the district court.

■ Best interests findings are necessary to demonstrate that the district court considered the proper statutory factors, to facilitate appellate review of the district court's decision, and to assure the parties that the relevant considerations were evaluated. *Rosenfeld v. Rosenfeld,* 311 Minn. 76, 82, 249 N.W.2d 168, 171 (1976); *see also Hesse v. Hesse,* 778 N.W.2d 98, 104 (Minn. App. 2009). Minn. Stat. § 518.17, subd. 1(a)

4. Christensen also suggests that Minn. Stat. § 518.18(d)(iv) may not apply because there is no "parenting plan provision" in this case. Minn. Stat. § 518.1705, subd. 2 (2016), sets forth the required elements of a parenting plan. While the agreements entered into by the parties include a parenting time schedule, they do not designate decision-making responsibilities or specify a method of dispute resolution, as required by the statute. *See* Minn. Stat. § 518.1705, subd. 2. Therefore, there is no parenting plan within the meaning of the statute in this case. *See Rutz v. Rutz,* 644 N.W.2d 489, 492 (Minn.App. 2002) (stat-

ing that judgment lacking dispute-resolution mechanism "did not create a parenting plan"), *review denied* (Minn. July 16, 2002).

However, because Christensen did not brief *this* issue on appeal and we are remanding for the district court to reconsider whether Christensen's request for equal parenting time would change the child's primary residence, we need not address this issue. *See State Dep't of Labor & Indus. v. Wintz Parcel Drivers, Inc.,* 558 N.W.2d 480, 480 (Minn. 1997) (stating that appellate courts decline to reach issues absent adequate briefing).

(2016), provides that "[i]n evaluating the best interests of the child for purposes of determining issues of … parenting time, the court must consider and evaluate all relevant factors." Absent any findings showing at least some consideration of the child's best interests, remand is necessary for the district court to make findings required for appellate review.

Christensen also argues that the currently ordered parenting time schedule awards him less than the 25% of parenting time to which he is presumptively entitled. *See* Minn. Stat. § 518.175, subd. 1(g) (2016) ("In the absence of other evidence, there is a rebuttable presumption that a parent is entitled to receive a minimum of 25 percent of the parenting time for the child."). Although Christensen raised this issue, the district court did not address his argument. The district court's failure to address this argument is inconsistent with caselaw. *See Hagen v. Schirmers*, 783 N.W.2d 212, 217 (Minn.App. 2010) (stating that district court must "demonstrate an awareness and application of the 25% presumption when the issue is appropriately raised and the court awards less than 25% parenting time"). Therefore, the district court should explicitly address the presumption on remand. *See id.* at 218–19 (remanding because record did not indicate district court considered presumption, stating that presumption "would be stripped of its purpose if appellate courts could, after the fact, calculate parenting time in a light most favorable to the decision and supply findings as a basis to conclude that the presumption, if considered, would have been overcome").

## DECISION

 Because the district court erred by concluding that Christensen's request would change the child's physical custody and by determining that the proposed modification would change the child's primary residence based solely on the apportionment of parenting time, we reverse the district court's denial of Christensen's request for equal parenting time and remand for reconsideration. On remand, the district court should consider not only the apportionment of parenting time, but also the child's relevant attachments with each parent's place of residence and the impact of the modification on such attachments in determining whether Christensen's proposed modification would change the child's primary residence. Because the district court failed to make findings showing that it had considered the child's best interests and Christensen's presumptive entitlement to 25% parenting time, we also remand for the district court's consideration of Christensen's alternative request for increased parenting time. The district court may, in its discretion, reopen the record for further evidence.

**Reversed and remanded.**